IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HABNAB TRANSPORTATION, INC. | : |
| | : |
| | : Civil Action No. 05-375 |
| Plaintiff/ | : |
| Counterclaim Defendant, | : |
| | : |
| v. | : |
| | : |
| US TRANSPORTATION SERVICES, | : |
| INC., and US BULK TRANSPORT, INC. | : |
| and/or U.S. BULK TRANSPORT IC., INC. | : |
| | : |
| Defendants/ | : |
| Counterclaim Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| HAB NAB TRUCKING, INC., and | : |
| HNS BULK SERVICES, INC. f/k/a | : |
| HAB NAB SOUTH, INC., | : |
| | : |
| Third-Party | : |
| Defendants. | : |

**DEFENDANTS, U.S. TRANSPORTATION SERVICES, US BULK
TRANSPORT, INC., AND U.S. BULK TRANSPORT IC, INC.
<u>ANSWER AND COUNTERCLAIMS TO THE AMENDED COMPLAINT</u>**

Defendants, U.S. Transportation, Services, Inc., US Bulk Transport, Inc., and U.S. Bulk Transport IC, Inc., by and through its undersigned counsel, answers the Amended Complaint as follows:

1. Admit upon information and belief.

2. Admit.

3. Admit that US Bulk is a Pennsylvania corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania. Denied that US Bulk's principal

place of business is 3230 W. Lake Road, Erie, Pennsylvania. By way of further response, the principal place of business for US Bulk is 205 Pennbrier Drive, Erie, PA, 16509.

4.   Admit.

5.   [Missing from Amended Complaint.]

## COUNT I

Defendant incorporated the forgoing paragraphs as if each such paragraph was set forth in its entirety herein.

6.   Denied. By way of further response, on information and belief, two separate entities exist, specifically Hab Nab Transportation, Inc. ("Plaintiff"), a broker under permit No. MC246436, and Hab Nab Trucking Co. ("HabNab Trucking"), a carrier under permit No. MC213770.

7.   Admit that US Transportation Services, Inc. ("US Transportation" or "Defendant") is a DOT licensed broker. Denied that US Transportation's DOT permit number is MC-33831B. By way of further response, US Transportation's DOT permit number is MC-355531B.

8.   Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 8 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendant US Transportation has no record of a verbal agreement with Plaintiff entered into in or around December, 2000. By way of further response, the procedure US Transportation utilizes in executing agreements is by verbally entering into an agreement and then immediately thereafter sending a written confirmation containing all of the terms of the agreement to the carrier

via facsimile, and the carrier then returns an executed copy of the confirmation to US Transportation via facsimile.

9. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 9 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendant US Transportation has no record of a verbal agreement with Plaintiff entered into in or around December, 2000.

10. Admit in part. Admit that in the ordinary course of business, either US Transportation would contact Plaintiff regarding shipments that are available for transport, or Plaintiff would contact US Transportation to inform US Transportation of available trucks Plaintiff had in specific areas for the transportation of commodities.

11. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 11 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendant US Transportation has no record of a verbal agreement with Plaintiff entered into in or around December, 2000.

12. Admit in part. Defendant US Transportation's records indicate that between January 2005 and April 2005, US Transportation brokered 127 loads to Hab Nab, and US Bulk brokered 63 loads to Hab Nab. By way of further response, Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments contained in Plaintiff's Exhibit "B" to the Amended Complaint and strict proof thereof is demanded at trial.

13. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 13 of the Complaint. By way of further response, Defendant US Transportation is without knowledge or information sufficient to

admit or deny the averments contained in Plaintiff's Exhibit "B" to the Amended Complaint.

14. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 14 of the Amended Complaint or Exhibit "B" to the Amended Complaint and strict proof thereof is demanded at trial.

15. Denied.

16. Admit.

17. It is unknown as to what "claim" the Plaintiff is referring to and US Transportation is without knowledge or information sufficient to admit or deny the averments contained in paragraph 17 of the Amended Complaint and strict proof thereof is demanded at trial. By way of further response, it is denied that any amount is due and owing by US Transportation to Plaintiff.

18. Denied. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments contained in paragraph 18 of the Amended Complaint and strict proof thereof is demanded at trial. By way of further response, on or about January 24 and 25, 2005, Plaintiff arranged for the transportation of loads for US Transportation, which ultimately contaminated the silos of Guardian Industries, causing Guardian Industries damages. US Transportation has contemporaneously with the filing of this Answer, filed a counterclaim against Plaintiff for the damages and loss incurred by Guardian Industries and US Transportation in the amount of $82,951.00 plus attorneys' fees, costs and interest.

19. Denied. By way of further response, see responses to Paragraphs 14, 15, 16, 17 and 18.

## COUNT II

20. Defendant incorporated the forgoing paragraphs as if each such paragraph was set forth in its entirety herein.

21. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments in Paragraph 20 of the Complaint and strict proof thereof is demanded at trial. By way of further response, the agreement attached as Exhibit A to the Amended Complaint speaks for itself.

22. Denied as stated. The agreement attached as Exhibit A to the Amended Complaint speaks for itself.

23. Denied as stated. The agreement attached as Exhibit A to the Amended Complaint speaks for itself. By way of further response, Paragraph 11 of the agreement attached as Exhibit A to the Amended Complaint provides that Plaintiff Habnab, as broker, agreed not to solicit traffic from any shipper, cosignee or customer.

24. Denied as stated. By way of further response, see Response to Paragraph 23. By way of further response, US Transportation and Plaintiff are in the same business and consequently have done and continue to do business with many of the same customers.

25. Denied. By way of further response, see responses to Paragraphs 23 and 24.

## COUNT III[1]

26. Denied. By way of further response, on information and belief, two separate entities exist, specifically HabNab Transportation, Inc., a broker under permit No. MC246436, and HabNab Trucking Co., a carrier under permit No. MC213770.

---

[1] The Amended Complaint identifies the third Count as "Count IV", however Defendants presume this is due to scrivener's error and therefore, identify the third count as "Count III".

27. Admitted in part. It is denied that US Bulk IC is and was a DOT licensed broker. It is admitted that US Bulk is a DOT licensed broker.

28. Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 28 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendants US Bulk and US Bulk IC have no record of a verbal agreement with Plaintiff. By way of further response, the procedure Defendants US Bulk and US Bulk IC utilize in executing agreements is by verbally entering into an agreement and then immediately thereafter sending a written confirmation containing all of the terms of the agreement to the carrier via facsimile, and the carrier then returns an executed copy of the confirmation to US Bulk and US Bulk IC via facsimile.

29. Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 29 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendants US Bulk and US Bulk IC have no record of a verbal agreement with Plaintiff.

30. See Response to Paragraph 29.

31. See Responses to Paragraphs 28 and 29.

32. Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 32 of the Complaint and strict proof thereof is demanded at trial. By way of further response, Defendants US Bulk and US Bulk IC have no record of a verbal agreement with Plaintiff.

33. Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 33 of the Complaint or the

WLM_502802_3/MOLIVERE

averments contained in Plaintiff's Exhibit "B" to the Amended Complaint and strict proof thereof is demanded at trial. By way of further response, between January 2005 and April 2005, US Bulk tendered 63 loads to Hab Nab.

34.   Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 34 of the Amended Complaint and strict proof thereof is demanded at trial.

35.   Defendants US Bulk and US Bulk IC are without knowledge or information sufficient to admit or deny the averments in Paragraph 35 of the Complaint and strict proof thereof is demanded at trial.

36.   Denied.

37.   Admitted that no payment has been made. Denied that any amount is due and owing by Defendants US Bulk and US Bulk IC to Plaintiff.

38.   Denied. Defendant US Transportation is without knowledge or information sufficient to admit or deny the averments contained in paragraph 18 of the Amended Complaint and strict proof thereof is demanded at trial. By way of further response, on or about January 24 and 25, 2005, Plaintiff arranged for the transportation of loads for US Transportation, which ultimately contaminated the silos of Guardian Industries, causing Guardian Industries damages. US Transportation has contemporaneously with the filing of this Answer, filed a counterclaim against Plaintiff for the damages and loss incurred by Guardian Industries and US Transportation in the amount of $82,951.00 plus attorneys' fees, costs and interest.

39.   Denied. By way of further response, see Responses to Paragraphs 37 and 38.

WHEREFORE, Defendants, US Transportation Services, US Bulk Transport, Inc. and U.S. Bulk Transport IC, Inc., requests that Counts I, II and III of Plaintiff's Amended Complaint be dismissed and that Defendants be awarded costs, attorneys' fees, and such other relief as the Court shall deem just and proper.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed for failure to state a claim against Defendant upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint should be dismissed because Plaintiff is in breach of the Agreement between the parties.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint should be dismissed as the allegations are in violation of the doctrines of waiver, and/or estoppel, and/or laches, and/or unclean hands, and/or the applicable Statues of Limitations.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Amended Complaint should be dismissed for failure to allege personal and/or subject matter jurisdiction over Defendants.

### RECOUPMENT AND SETOFF

To the extent Plaintiff is entitled to relief, if any, Defendants are entitled to recoupment and setoff of such relief to the extent of its damages arising out of the same or related transactions.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert additional defenses based upon further investigation and discovery.

WHEREFORE, Defendants, US Transportation Services, US Bulk Transport, Inc. and U.S. Bulk Transport IC, Inc., requests that Counts I, II and III of Plaintiff's Amended Complaint be dismissed and that Defendants be awarded costs, attorneys' fees, and such other relief as the Court shall deem just and proper.

**COUNTER-CLAIM BY US TRANSPORTATION SERVICES, INC.
AGAINST HAB NAB TRANSPORTATION, INC. AND
THIRD PARTY COMPLAINT AGAINST HAB NAB TRUCKING, INC.,
AND HNS BULK SERVICES, INC. f/k/a HAB NAB SOUTH, INC.**

1. US Transportation Services, Inc. ("US Transportation") incorporates the foregoing paragraphs as if each such paragraph was set forth in its entirety herein.

### The Parties

2. US Transportation is a Pennsylvania corporation with its principal place of business at 205 Pennbriar Drive, Erie, Pennsylvania. US Transportation operates as a DOT licensed broker.

3. Counterclaim Defendant Hab Nab Transportation, Inc. ("Hab Nab Transportation"), is a Delaware corporation organized and existing under the laws of the State of Delaware with its principal place of business at RR13, Seaford, Delaware. Hab Nab Transportation operates as a broker under permit No. MC246436.

4. On information and belief, Third-Party Defendant Hab Nab Trucking, Inc. ("Hab Nab Trucking"), is a Delaware corporation with its principal place of business at RR13, Seaford, Delaware. Hab Nab Trucking operates as a carrier under permit No. MC213770.

5. On information and belief, Third-Party Defendant HNS Bulk Services, Inc., f/k/a Hab Nab South, Inc. ("Hab Nab South"), is a Florida corporation with its principal place of business at 917 7th Avenue, Vero Beach, Florida. On further information and belief, Hab Nab South is an agent that represents Hab Nab and Hab Nab Trucking in soliciting and brokering the transportation of materials. It is believed and therefore averred that Hab Nab South regularly conducts business in the State of Delaware,

WLM_502802_3/MOLIVERE

particularly on behalf of Hab Nab and Hab Nab Trucking who both have principal places of business in Delaware.

## BACKGROUND

6. In or around January 2005, US Transportation Services contacted Hab Nab and Hab Nab Trucking through their agent, Hab Nab South, regarding the transportation of a load of dolomite that was to be picked up from National Lime & Stone in Carey, Ohio and delivered to Guardian Industries ("Guardian") (the "Agreement").

7. The agreement to pick up a load of dolomite from National Lime & Stone in Carey, Ohio and deliver it to Guardian was confirmed in writing by US Transportation (the "Confirmation"). A copy of the Confirmation is attached hereto and incorporated herein as Exhibit "A

8. Pursuant to the terms of the Agreement and the terms contained in the Confirmation, the transportation of the dolomite required that it be covered with plastic or have an EPA Tarp, and specifically required that the truck trailers be washed out prior to the transportation of the dolomite.

9. As evidenced by the Agreement and the Confirmation, Hab Nab, Hab Nab Trucking and Hab Nab South were aware of the conditions and aware that the dolomite could not be contaminated and consequently, the need to have the trailers washed out properly prior to the transportation of the dolomite.

10. On information and belief, Hab Nab South, on behalf of Hab Nab and Hab Nab Trucking, contacted Gary Ritter, operator of Ritter Feeds, and requested the use of Ritter Feeds trucks and drivers to transport the dolomite.

11. On information and belief, the Ritter Feeds trucks utilized to transport the dolomite under each of Hab Nab, Hab Nab Trucking and Hab Nab South's Agreement and Confirmation with US Transportation Services, were previously used to haul granulated chromium ore.

12. Contrary to the Agreement and the Confirmation, the trucks used to haul the granulated chromium ore to Guardian were not properly washed out prior to loading the dolomite at National Lime & Stone.

13. As a result of the dolomite being transported in the unwashed trucks, the dolomite became contaminated with the chromium ore.

14. As a result of the trucks having not been cleaned appropriately, the trucks delivered approximately 89.74 tons of contaminated dolomite on January 25 and January 26, 2005 to Guardian.

15. The dolomite was to be used for the production of glass.

16. From January 26, 2005 through January 31, 2005, the glass produced at Guardian with the dolomite was defective, containing chromite defects.

17. As a result of the chromite defects, Guardian was forced to scrap the glass.

18. The total cost incurred by Guardian due to the chromite contamination was $82,951.00. The cost breakdown is:

- $74,860.00   Cost of 197 tons glass scrapped due to chrome defects @ $380.00 per ton;
- $4,925.00    197 tons of cullet gained due to scrapping glass @ $25.00 per ton for contaminated cullet;
- $69,935.00   Scrapped glass less cullet gained;
- $11,016.00   Overtime of 5 personnel per shift due to changes in production schedules as result of contamination issue;
- $2,000.00    Rush order adjustments for excess boxes including premiums incurred due to production schedule changes;
- $82,951.00   Total cost of Chromite Contamination.

19.     As a result of the contamination, Guardian has made a demand upon US Transportation Services for damages in the amount of $82,951.00. A copy of the demand is attached hereto and incorporated herein as Exhibit "B".

20.     On or about April 27, 2005, US Transportation Services made demand upon Hab Nab for damages, which Hab Nab has refused to pay. A copy of the demand is attached hereto and incorporated herein as Exhibit "C".

### COUNT I – BREACH OF CONTRACT

21.     US Transportation incorporates the foregoing paragraphs as if each such paragraph was set forth in its entirety herein.

22.     Pursuant to the Agreement and the Confirmation, Hab Nab, Hab Nab Trucking and Hab Nab South were to arrange the transport a load of dolomite from National Lime & Stone in Carey, Ohio and deliver it to Guardian in Geneva, New York and were required to have the truck and trailer used to transport the dolomite washed out to prevent contamination of the dolomite.

23.     Upon information and belief, Hab Nab, Hab Nab Trucking and Hab Nab South contracted with Ritter and Ritter Feeds to transport the dolomite.

24.     Hab Nab, Hab Nab Trucking and Hab Nab South breached the Agreement and Confirmation with US Transportation by failing to ensure that the trucks used to transport the dolomite were properly prepared and washed out before hauling the dolomite as specifically required by the Agreement and Confirmation with US Transportation.

25.     As a result of the breach, the dolomite became contaminated resulting in defective glass being produced. The defective glass was ultimately scrapped resulting in $82,951.00 in damages.

26. Hab Nab, Hab Nab Trucking and Hab Nab South owe US Transportation $82,951.00 together with pre- and post-judgment interest and the costs of this action.

WHEREFORE, Counterclaim and Third-Party Plaintiff US Transportation, respectfully requests that judgment be entered in its favor and against each of Hab Nab, Hab Nab Trucking and Hab Nab South in the amount of $82,951.00, together with interest, attorneys fees, costs and expenses, and such other relief as this Court shall deem just and proper.

## COUNT II – INDEMNIFICATION / CONTRIBUTION

27. US Transportation incorporates the foregoing paragraphs as if each such paragraph was set forth in its entirety herein.

28. As a result of the trucks used to transport the dolomite to Guardian having not been cleaned appropriately, the trucks delivered approximately 89.74 tons of contaminated dolomite on January 25 and January 26, 2005 to Guardian.

29. On January 26, 2005, glass being produced with the dolomite was defective, containing chromite defects.

30. As a result of the chromite defects, the glass was scrapped.

31. The total cost incurred by Guardian due to the chromite contamination was $82,951.00.

32. As a result of the contamination, Guardian has made a demand upon US Transportation Services for damages in the amount of $82,951.00.

33. To the extent US Transportation is caused to pay Guardian in connection with the contaminated dolomite and subsequent defective glass produced from the dolomite,

WLM_502802_3/MOLIVERE

US Transportation is entitled to contribution from Hab Nab, Hab Nab Trucking and Hab Nab South.

WHEREFORE, Counterclaim and Third-Party Plaintiff US Transportation, respectfully requests that judgment in the form of contribution be entered in its favor and against each of Hab Nab, Hab Nab Trucking and Hab Nab South in the amount US Transportation may be caused to pay Guardian, together with interest, attorneys fees, costs and expenses, and such other relief as this Court shall deem just and proper.

### COUNT III - SETOFF

34. US Transportation incorporates the foregoing paragraphs as if each such paragraph was set forth in its entirety herein.

35. As a result of the trucks having not been cleaned appropriately, they delivered approximately 89.74 tons of contaminated dolomite on January 25 and January 26, 2005 to Guardian.

36. On January 26, 2005, glass being produced with the dolomite was defective, containing chromite defects.

37. As a result of the chromite defects, the glass was scrapped.

38. The total cost incurred by Guardian due to the chromite contamination was $82,951.00.

39. As a result of the contamination, Guardian has made a demand upon US Transportation Services for damages in the amount of $82,951.00.

40. To the extent US Transportation is caused to pay Guardian in connection with the contaminated dolomite and subsequent defective glass produced from the dolomite, US Transportation is entitled to a setoff.

WLM_502802_3/MOLIVERE

WHEREFORE, Counterclaim and Third-Party Plaintiff US Transportation, respectfully requests that judgment be entered in its favor and against each of Hab Nab, Hab Nab Trucking and Hab Nab South in the amount US Transportation may be found liable to Guardian, together with interest, attorneys fees, costs and expenses, and such other relief as this Court shall deem just and proper.

Dated: October 7, 2005
Wilmington, Delaware

EDWARDS & ANGELL, LLP

_____
Denise Seastone Kraft (Del I.D. 2778)
Mark D. Olivere (Del. I.D. 4291)
919 Market Street, Suite 1500
Wilmington, DE 19801
(302) 777-7770
(302) 777-7263 (facsimile)
dkraft@edwardsangell.com
molivere@edwardsangell.com